```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
SECURITIES AND EXCHANGE COMMISSION,       :
:
Plaintiff,   :
:           22-cv-3096 (LJL)
-v-                         :
:           OPINION AND ORDER
DOMENIC CALABRIGO, CURTIS ("CURT")        :
LEHNER, HASAN SARIO, and COURTNEY         :
VASSEUR,                                  :
:
Defendants.  :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

The United States (the "Government") moves for an order permitting it to intervene pursuant to Federal Rule of Civil Procedure 24 and to stay the matter until the conclusion of a parallel criminal case pending in this District. Dkt. No. 79.

For the following reasons, the motion to intervene is granted and the motion to stay the matter is granted in part and denied in part.

## BACKGROUND

The United States Securities and Exchange Commission ("SEC") charges Defendants Domenic Calabrigo ("Calabrigo"), Curtis (Curt) Lehner ("Lehner"), Hasan Sario ("Sario"), and Courtney Vasseur ("Vasseur") with participating in a scheme from early 2016 through late 2018 to manipulate the stocks of at least nine microcap issuers in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The SEC also charges the Defendants with violations of Section 9(a)(2) of the Exchange Act, 15 U.S.C. § 78i(a)(2), and Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a) and 77e(c). In the

alternative to the first claim for, Defendants are charged with aiding and abetting violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(1) and (3). In the alternative to the second claim, Defendants are charged with aiding and abetting violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) promulgated thereunder, 17 C.F.R. § 240.10b-5(a) & (c). Finally, in the alternative to the third claim, Defendants are charged with aiding and abetting violations of Section 9(a)(2) of the Exchange Act, 15 U.S.C. § 78i(a)(2).

The Defendants played different roles in the alleged schemes. Dkt. No. 1. Lehner and Vasseur were instrumental in setting up the scheme. Sario had a significant role in directing the trading of the defendants and his offshore bank accounts were used as part of the scheme. Calabrigo had a role in the alleged fraudulent promotion of the stock of the microcap issuers. *Id.* The complaint was filed on April 14, 2022. *Id.* Defendants Calabrigo and Sario have appeared in the action. Defendants Lehner and Vasseur have not appeared.

Each of the four Defendants in this civil case has also been named as a defendant in an indictment returned by a grand jury in the Southern District of New York on February 24, 2021. *United States v. Lehner*, No. 21-cr-121-RMB (S.D.N.Y.). The indictment charges the Defendants with materially identical allegations of conspiracy to commit securities fraud from in or about 2013 through in or about December 2018. It charges them with conspiracy to commit offenses against the United States, to wit, securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, all in violation of 18 U.S.C. § 371. *Lehner*, No. 21-cr-121 at ECF No. 6. The indictment also charges the Defendants with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, with securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, with wire fraud in violation of 18 U.S.C. § 1343, and with conspiracy

to commit concealment money laundering in violation of 18 U.S.C. § 1956(h).  The indictment was unsealed on or about April 14, 2022 after Lehner and Vasseur were arrested in Canada and Calabrigo was arrested in the Bahamas, all three pursuant to a provisional arrest warrant.  Calabrigo was subsequently extradited to the United States and presented and arraigned on April 25, 2022.  Extradition proceedings with respect to Lehner and Vasseur are pending in Canada.  Sario has yet to be arrested and resides in Turkey, which will not extradite him.  The criminal case is pending.  No trial date has been set.

## PROCEDURAL HISTORY

The SEC filed its complaint in this case on April 14, 2022.  Dkt. No. 1.  On April 15, 2022, the Court issued a temporary restraining order ("TRO") and an asset freeze against each of the four Defendants and ordered them to show cause why they should not be preliminarily restrained from transferring assets during the pendency of the action.  Dkt. No. 14.  The TRO was converted into a preliminary injunction as to Defendants Vasseur, Calabrigo, and Lehner.  Dkt. Nos. 64–65, 70.  The Court denied the motion for a preliminary injunction as to Defendant Sario except to the extent that the SEC sought to restrain him from destroying, altering or concealing documents that might be relevant to the case.  Dkt. No 67.

The Government's motion to intervene and for a stay was filed on August 19, 2022.  Dkt. No. 79.  Sario filed his opposition to the motion for a stay on September 2, 2022.  Dkt. No. 85.  The Government filed a reply memorandum in further support of its motion to intervene and for a stay on September 14, 2022.  Dkt. No. 89.

## DISCUSSION

The Government seeks to intervene for the purpose of requesting a complete stay of the action and requests a complete stay of the action until the conclusion of the criminal case.  Calabrigo consents to the motion for a complete stay and neither Vasseur nor Lehner have filed

3

papers opposing the stay. The SEC takes no position with respect to the motion. Dkt. No. 80 at 9.[1]

Sario does not oppose the Government's motion to intervene or for a stay of "new written or oral discovery by all parties." Dkt. No. 85 at 2. He argues, however, that the Court should deny the request for a stay to the extent that it would relieve the SEC of the obligation to make "Rule 26 disclosure of historical records." *Id.* Sario argues that he and his counsel need this historical information "to understand and investigate the SEC's claims in this case (and the parallel criminal case) before the events become even more stale in terms of time" and "to intelligently discuss . . . the merits of the allegations against him and the options for resolving them." *Id.* at 3. At the same time, however, he asserts that "he admittedly would exercise, at least for now, his Fifth Amendment rights as to discovery directed to him." *Id.* at 2.

The Government argues that the Court should stay this action because, were it to proceed in advance of the criminal case, it would impair and impede the Government's ability to protect its interest in the enforcement of the federal criminal law. Dkt. No. 80 at 11. It claims that allowing discovery to go forward in the civil case would impair no legitimate interest of the Defendants, two of whom have yet to appear and a third of whom does not oppose the stay, and would impermissibly allow the fourth Defendant, Sario—who has indicated he will assert his Fifth Amendment rights—to impermissibly use the civil case to circumvent the restrictions on discovery in the criminal case where he has yet to appear. *Id.* at 9. It asserts that denial of a stay would result in asymmetrical discovery, pursuant to which Defendants would be able to obtain statements from relevant witnesses through depositions and other discovery mechanisms

---

[1] Both Vasseur and Lehner have been served. Vasseur has failed to timely respond to the complaint. Lehner has until October 5, 2022 to move or answer.

4

(including historical discovery) while the SEC would be unable to use these discovery mechanisms to obtain discovery from defendants, each of whom will assert his Fifth Amendment rights. *Id.* at 20. It argues that permitting Sario—who is not entitled to criminal discovery as a result of his refusal to surrender on an active arrest warrant—to use civil discovery as a means to obtain such discovery "would be particularly egregious." *Id.* at 21.

The Court first addresses the motion to intervene and then the motion for a stay.

## I. Motion to Intervene

Rule 24(a) of the Federal Rules of Civil Procedure provides for intervention as of right when the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a). Rule 24(b) authorizes permissive intervention when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising its discretion under Rule 24(b), a court should "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Government is entitled to intervene under Rule 24(a) and will be permitted to intervene under Rule 24(b), for purposes of seeking a stay. *See SEC v. Shkreli*, 2016 WL 1122029, at *2–3 (E.D.N.Y. Mar. 22, 2016) (granting intervention under Rules 24(a) and 24(b)); *SEC v. Treadway*, 2005 WL 713826, at *2 (S.D.N.Y. Mar. 30, 2005) ("Whether couching the decision in terms of mandatory or permissive intervention or simply referring to Rule 24 without specifying the subsection on which they rely, courts in this Circuit have routinely allowed federal or state prosecutors to intervene in civil litigation in order to seek a stay of discovery." (citing cases)). The Government has "a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal

matter," *SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir. 1988); *see SEC v. Abraaj Inv. Mgmt. Ltd.*, 2019 WL 6498282, at *1 (S.D.N.Y. Dec. 3, 2019); *SEC v. Blaszczak*, 2018 WL 301091, at *1 (S.D.N.Y. Jan. 3, 2018); *see also SEC v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993) ("It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."). In addition, in this case as in *Shkreli*, "there are significant overlaps between the SEC complaint and the indictment in the criminal case" and "[b]oth actions share a great number of common legal and factual questions, which militates strongly in favor of permissive intervention." *Shkreli*, 2016 WL 1122029, at *3.

The motion to intervene is granted.

**II.     Motion to Stay**

"A total stay of civil discovery pending the outcome of related criminal proceedings . . . is an extraordinary remedy." *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 13–14 (S.D.N.Y. 1990). Nonetheless, "[a] district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012). In deciding whether to grant a stay, the Second Circuit has instructed courts to consider:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* at 99.

No party disputes that there is nearly a complete overlap of the issues in the criminal case

with those presented in the civil case. As the Government puts it, "[b]oth the Indictment and the SEC Complaint allege manipulation of the very same stock tickers, by the very same defendants, through materially the same means." Dkt. No. 80 at 13; *see* Dkt. No. 85 at 9 (Sario agreeing that there is an overlap of allegations in the civil and criminal cases). "Courts have consistently recognized this as a particularly significant factor." *Shkreli*, 2016 WL 1122029, at *4. This factor thus weighs in favor of a stay. *See Crawford & Sons v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004) ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter."); *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter.").

The parties also agree that the second factor weighs in favor of a stay, albeit not to the extent that the Government urges. Dkt. No. 80 at 14–15; Dkt. No. 85 at 9. Courts routinely grant a stay of some duration following an indictment. *See Shkreli*, 2016 WL 1122029, at *5 ("[T]he strongest argument for granting a stay is where a party is under criminal indictment."); *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. at 13 ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."). At that point, the risk of two parallel proceedings addressing identical issues is no longer speculative; a criminal case is in process. "[T]he likelihood that a defendant may make incriminating statements is greatest after an indictment has issued." *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). In addition, in virtually all cases, the prejudice to the plaintiffs in the civil case is reduced. *Id.* Civil cases frequently move at a slow pace in federal court. By contrast, the Speedy Trial Act and a defendant's constitutional right to a speedy trial mean that criminal cases

proceed with relative alacrity. Absent the exclusion of time, the trial of a defendant charged in an indictment must commence within seventy days of the filing date. 18 U.S.C. § 3161(c)(1).

There is one wrinkle in this case. Only one Defendant has appeared in the criminal case. Two Defendants are still awaiting extradition, and Sario himself is not subject to extradition. A stay of the criminal case could end up being indefinite, lasting until the two Defendants are extradited and, even then, until Sario decides to surrender or leaves Turkey and can be arrested. *See* Dkt. No. 85 at 5 ("[U]nless Sario voluntarily comes to the United States, a complete stay of the civil case would likely be lengthy and could possibly be indefinite"). This case would never reach resolution. Sario's purported concern is understandable and is shared by the Court. At some point, even if Sario has not surrendered in the criminal case, he will have to face the choice of testifying or asserting his Fifth Amendment right in the civil case. For that reason, this factor supports a complete stay of only one year, subject to a further extension depending on circumstances in the criminal case.

The parties also agree, correctly, that the third factor, the private interest of the plaintiff in proceeding expeditiously, is neutral as the SEC has taken no position on this motion. Dkt. No. 80 at 9; *see* Dkt No. 85 at 9 (Sario arguing that the third factor is "not relevant"); *see also Abraaj*, 2019 WL 6498282, at *2 ("As '[t]he SEC has taken no position on the Government's request ... the Court thus need not consider its interests.'" (quoting *Blaszczak*, 2018 WL 301091, at *2)).

Where the parties really join issue are on the fourth, fifth and sixth factors. Sario argues that the fourth factor weighs in favor of him. This factor asks the court to evaluate "the private interests of and burden on the defendants." *Louis Vuitton Malletier S.A.,* 676 F.3d at 99. It is generally understood to address the competing considerations from the perspective of the

defendant of, on the one hand, being "faced with the dilemma of making potentially incriminating admissions during discovery or asserting their Fifth Amendment rights, on the basis of which the civil jury can draw an adverse inference," and on the other delaying the conclusion of the proceedings against them which can present "an economic burden" and a cloud on the defendant's career and personal life. *SEC v. Treadway*, 2005 WL 713826, at *3–4.

Sario does not dispute that allowing the civil case to go forward would present him with the dilemma identified in *Treadway*. That is presumably the reason why he does not ask the Court to allow this case to go forward through discovery and to trial—if the case did go forward, he presumably would assert his Fifth Amendment right. It is also presumably the reason why Calabrigo consents to a stay. He, too, has an interest in having the criminal case resolved and then, if the criminal case is resolved in his favor, in being able to defend the civil case free from the fear that the SEC will be able to elicit from him an incriminating statement that can then be used against him in a criminal prosecution.

Sario does not argue that a stay will prevent him from clearing his name more quickly. Until he appears in the criminal case, his name will be tarnished by the Grand Jury's conclusion that probable cause exists to believe he committed multiple felonies. Even if he were to appear in the criminal case, the Court would have to consider the interests of the other defendants before deciding that the civil case could go forward before the conclusion of the criminal action.

Instead, Sario appears to seek the best of both worlds—to obtain the discovery that the Government would be compelled to give him under Rule 16 without the burden of having to surrender to the criminal proceedings or having to invoke his Fifth Amendment right to discovery in the civil proceedings. The Court agrees with Judge Nathan that this is not a sufficient reason to deny the Government's motion for a stay. *Abraaj*, 2019 WL 6498282, at *2.

Nor is it consistent with the principles of the Federal Rules of Civil Procedure. Rule 26 requires each party in a civil proceeding to make initial disclosures so that they have "certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement." Fed. R. Civ. P. 26, advisory committee note to 1993 Amendment. It was not intended to give a party that is sued information for information's sake alone, *cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); if, as Sario appears to concede, there is no realistic possibility of this civil case moving to trial any time soon (or in advance of the conclusion of the criminal case), then there is no legitimate reason why he should be given Rule 26 disclosures in this case.

Sario asserts to the contrary that he has "an interest in understanding the basis of th[e] allegations so that he can have a productive discussion with his counsel regarding his options for addressing them," so that he may in turn have "productive discussions with the SEC and USAO in an attempt to resolve the allegations against him." Dkt No. 85 at 9–10. The Court does not begrudge Sario for his interest in obtaining early discovery before he has even surrendered; nor would (or could) the Court step in the way should the Government, in the exercise of its discretion, choose to share information with Sario in an effort to convince him to face the Grand Jury's charges or to reach a resolution. But Sario's interest in receiving information in the civil case is not a reason for permitting him to receive that information when even he admits that it will not be usable in discovery in the civil case for the foreseeable future.

The remaining argument Sario makes about prejudice is a makeweight. He asserts that the allegations against him are largely based on third-party accounts of oral conversations with him that took place many years ago and that the granting of a stay may inhibit his ability to

investigate and preserve those statements as the memories of the witnesses continue to fade. Dkt. No. 85 at 10. He does not identify how his receipt of written discovery will address the issue of fading memories. If, as a result of his failure to appear in the criminal case, testimony cannot be preserved, that will be a problem (or perhaps a reward) of defendant's own making. Moreover, to paraphrase Judge Nathan, "'the parallel proceedings here actually mitigate this concern.' . . . 'For example, witnesses' statements are likely preserved in interview notes' as well as in 'trial testimony,'" should Sario surrender or the efforts of the two other defendants to avoid extradition fail. *Abraaj*, 2019 WL 6498282, at *2.

The fifth and sixth factors are readily resolved in favor of a stay. Judicial efficiency will be promoted by a complete stay for a period of at least one year. "As many courts in similar circumstances have noted, '[t]he Criminal Case will resolve issues of fact common to the civil case and may reduce the number of issues to be decided in subsequent proceedings in this case.'" *Abraaj*, 2019 WL 6498282, at *3 (quoting *Blaszczak,* 2018 WL 301091, at *3). If Sario does not appear in the criminal case or that case does not go forward, the Court can revisit this conclusion in one year's time. Sario argues, in effect, that there will be no increased judicial efficiency from a stay because this civil case will not go forward even if the Court grants his requested relief—it will still be stayed. But that point only demonstrates the weakness of his argument. The civil courts are to be used for the resolution of civil disputes. There is inefficiency caused when a civil case is permitted to remain open not for that purpose but solely as an instrument to obtain discovery which affords one side an advantage in a criminal case.

Finally, the sixth factor favors a stay. "It is, of course, 'in the public interest to prevent circumvention of the limitations on discovery in . . . criminal proceedings.'" *Abraaj*, 2019 WL 6498282, at *3 (quoting *Blaszczak,* 2018 WL 301091, at *3 (alteration in original) (internal

quotation marks omitted)).  "A stay is therefore 'often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution which parallels the subject matter of the civil action.'"  *Id.* (quoting *SEC v. Downe*, 1993 WL 22126, at *12 (S.D.N.Y. Jan. 26, 1993)).  Although Sario argues that the SEC's investigative file which it seeks through the partial stay "should roughly parallel Rule 16 discovery in criminal cases," Dkt. No. 85 at 11, that is precisely the point.  Sario is not entitled to Rule 16 discovery until he subjects himself to the jurisdiction of the criminal court and to the reciprocal obligations that that rule would impose on him.

## CONCLUSION

The Government's motion is granted in part and denied in part.  The Government's motion to intervene is granted, and the case will be stayed for a period of one year from today's date.  The Government is ordered to inform the Court by no later than two weeks before the expiration of the stay whether the stay should be continued.

The Clerk of Court is respectfully directed to close Dkt. No. 79.


SO ORDERED.

Dated: September 30, 2022
       New York, New York
                                             _____
                                                    LEWIS J. LIMAN
                                                  United States District Judge